WILLIS B. SMITH AND AMELIA M. SMITH, HUSBAND AND WIFE, AND LAS VEGAS–TONOPAH–RENO STAGE LINES, INC., A NEVADA CORPORATION, APPELLANTS, *v.* CITY OF LAS VEGAS, NEVADA, A MUNICIPAL CORPORATION, RESPONDENT.

No. 4691

April 24, 1964

391 P.2d 505

[Rehearing denied May 20, 1964]

*Harry E. Claiborne,* of Las Vegas, for Appellants.

*Sidney R. Whitmore,* City Attorney, and *George F. Ogilvie, Jr.,* Chief Deputy City Attorney, Las Vegas, for Respondents.

# OPINION

By the Court, BADT, C. J.:

The City of Las Vegas, respondent herein, commenced this action for an injunction against a continuing violation by the defendants of the city's zoning ordinance. It alleged that pursuant to authorization of Chapter 278 of the Nevada Revised Statutes it had adopted a master plan of zoning for the city which does not permit outdoor storage "of large diesel-powered or gasoline-powered auto buses in a C-2 (general commercial) district"; that the defendants Willis and Amelia Smith, appellants herein, are owners of property in a C-2 district and that they have permitted appellant Las Vegas-Tonopah-Reno Stage Lines, Inc., to use the property for purposes of outdoor storage in violation of the ordinance; that the city informed appellants of the violation and directed them to cease and desist from the parking of buses on the property, but that the practice has persisted; that the city's action is authorized by section XXVI of the zoning ordinance[1] and that the Board of Commissioners had requested the city attorney to seek an injunction.

The lots owned by Smith and used by the stage lines were described as Lots 4 and 5, Block 6, of Fairview Tract to the City of Las Vegas, and as Lots 14, 15, and 16, Block 7, of said tract, and that the same were in a C-2 zone. Defendants admitted that the property was used by the bus company "to park their buses in conjunction with their business located nearby," but denied that this was a violation of the ordinance.

Under the pertinent part of the zoning regulations, general commercial use in a C-2 district permits use in

---

[1]"Enforcement; legal procedure: (D) Any * * * use of property hereafter contrary to the provisions of this chapter * * * is hereby declared to be unlawful and a public nuisance, and the attorney shall upon order of the Board of Commissioners, immediately commence action * * * for the abatement, removal and enjoinment thereof * * * and shall take such other steps and shall apply to such court or courts as may have jurisdiction to grant such relief as will abate * * * such * * * use, and restrain and enjoin any person from * * * using any property contrary to the provisions of this chapter. * * *"

any way that it is permitted in a C-C or C-1 zone, in addition to certain specified uses. Under subdivision (A) 8 of C-2 "[o]ther similar enterprises or businesses of the same general class, which in the opinion of the Planning Commission, as evidenced by resolution of record, are not more detrimental to the welfare of the particular district than the enterprises or businesses enumerated in this subsection."

The C-C or C-1 permitted uses in C-2 are not applicable. Nor was there any resolution by the planning commission permitting use not more detrimental than the particularly enumerated permissible uses.

Respondent moved for summary judgment based upon the amended complaint, the answer, and the affidavit of Donald J. Saylor, director of planning of the city. No evidence in opposition was presented. The court ordered the issuance of a permanent injunction and that "counsel for plaintiffs may prepare findings of fact and conclusions of law, and a permanent injunction and judgment may be entered in accordance therewith." No findings or conculsions are in the record. They were not included in appellants' designation of the record on appeal and respondent filed no counter-designation. The appeal is from the order granting the motion for summary judgment and the order granting a permament injunction.[2]

The ordinance does not in terms either permit or deny the right of parking buses in a C-2 area. Saylor's affidavit in support of the motion for summary judgment alleges, among other things:

"That in addition to such enumerated uses, other uses customarily incidental thereto are permitted when located on the same premises as the enumerated uses; but that the lots in question are not the lots, nor are they adjacent to the lots on which the defendants' business is located, the same being located on Lot 12, Block 19, of Buck's Sub-division, and on Lots 9 and 10, Block 8,

[2]The notice of appeal recites that it is also taken from the writ of permanent injunction issued by the clerk and the decision of the court relative thereto—nonappealable matters with which we are not concerned.

of Fairview Tract to the City of Las Vegas." This is not denied.

The trial court's construction of the ordinance was to the effect that the parking of the buses in the C-2 zone was "in violation of the zoning ordinance of the City of Las Vegas, and that the use thereof, and the purpose for which the defendants utilized said property, is a nuisance." We concur with the trial court's construction and the administrative construction of the ordinance. In no other way can the master plan, which is clearly intended to be all encompassing, be given effect.

Appellants contend that there is no showing that they violated the ordinance because the buses were not "stored" but merely "parked." They cite certain cases which purport to make a distinction between "storing" and "parking" in some instances. This is a field of semantics into which we do not feel it is necessary to enter. No evidence was offered by appellants with reference to the length of time, the conditions, the circumstances, the number of buses or any other conditions that might have led the trial court or this court to the necessity of drawing a distinction.

Appellants also assign error in that it appears from the trial court's decision that it stated its awareness of sundry conditions within the city with reference to the operation of bus lines and the parking of their diesel equipment—a realm beyond its powers of judicial notice or judicial knowledge. Appellants' counsel was likewise (apparently from his long residence in the city) led to a recital in his opening brief of a great many facts that nowhere appear in the record. We find it in order to ignore both the statements of the court and the statements of counsel as to such facts.

Appellants further assign error in holding that an injunction will lie under the circumstances. The ordinance specifically declares that a use in violation thereof is a nuisance, and may be enjoined. Such provisions

224

clearly give the right to relief by injunction. Leigh v. City of Wichita, 148 Kan. 607, 83 P.2d 644, 119 A.L.R. 1503; 6 McQuillin, Municipal Corporation § 20.33 (3d ed.).

Appellants further contend that the court erred in granting a permanent injunction against appellants because such action was discriminatory as the city "[permitted] two other bus companies to remain in the C-2 zone * * *." The record is bare of any such situation.

Appellants further assign error because the court did not make findings, thus depriving appellants of the opportunity of submitting proposed amendments or changes. NRCP 52(a) specifically provides that no findings are required in the case of summary judgments.

Other assignments are made which we do not consider it necessary to discuss. The judgment and orders are affirmed with costs.

McNamee and Thompson, JJ., concur.