BJARNE PEDERSON, APPELLANT, *v.* COUNTY OF ORMSBY, AND KEITH MACDONALD, WILLIAM DIAL AND JOHN MEDER, AS COUNTY COMMISSIONERS, RESPONDENTS.

No. 6191

December 21, 1970                    478 P.2d 152

*Gary A. Sheerin,* of Carson City, for Appellant.

*Robert List,* District Attorney, Carson City, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

Early in 1961 John Wiley and Bjarne Pederson orally agreed that Pederson would assist in making certain improvements to five acres of Wiley's Government Homestead property so that Wiley could get the government patent and then Pederson would buy it. The necessary work was done, including the building of a house on one acre of the property. Wiley received the government patent on July 11, 1961 and on July 31, 1961 he deeded the five acres to Pederson. On the same day Pederson, in turn, deeded one acre to Joe and Mary Sanchez. The house was located on that acre.

Between December of 1961 and April 1968 Pederson used part of the remaining four acres as a commercial gravel pit for his ready-mix concrete business. On April 28, 1968 he was ordered by Ormsby County (now denominated Carson City) to cease operation of the gravel pit because of two ordinances proscribing such use. The ordinances, both similarly effective, were enacted in 1961 and 1965. Pederson sought to enjoin the county from enforcing the ordinances against him, contending that he was "grandfathered" into a nonconforming use because he had used the gravel from the excavating and grading of the Sanchez house for commercial purposes before the first ordinance was enacted December 1, 1961.

His petition for injunctive relief was denied and he appealed to this court principally on the question of whether the excavation and use of the materials from the Sanchez residential property qualifies as the use of the entire parcel as a commercial gravel pit.

1. It was agreed between the parties that for a nonconforming use to have been established Pederson had to actually have used the parcel for a gravel pit before December 1, 1961. Whether Pederson operated a commercial pit on the acreage in question before December 1, 1961 is a question of fact. The trial court found specifically that he did not operate a commercial gravel pit on this property at that time, that the excavation for the construction of the house and outbuildings was for the sole purposes of the house and was not commercial in nature.

Some evidence favors Pederson's position. He used the decomposed granite accumulated in the excavating and leveling for the house in his ready-mix business. Further, the purpose of building the house was to provide a home for the person watching the pit. However, neighbors testified that in 1961 no excavating was done on the property except around the homesite and that any excavating and grading done after the house was built was done at the request of Sanchez, the owner of the house, so that he could landscape his yard and build a garage and pump house. The record also shows the excavation and grading were done gradually because Sanchez could not afford to pay for it and Pederson was doing it as he was able to use the gravel. Apparently, the trial court was satisfied that the primary activity concerned the Sanchez house, not Pederson's business.

The findings of a trial court are entitled to great respect and will not be disturbed unless from the record they are unsupported by the evidence. Harvey v. Streeter, 81 Nev. 177, 400 P.2d 761 (1965). While it can be convincingly argued that Pederson at all times intended eventually to make a gravel pit on the remaining four acres, the principal factor is whether he actually used the property as a gravel pit at the time the ordinance was enacted. The trial court reasonably concluded that the excavating and grading that were done on the property at that time were almost solely associated with the construction of the house and that the use of the gravel was merely ancillary to the main operation at that time. The use of the gravel from the house was only incidental. The trial judge found that there had been no gravel pit in operation in 1961 and because this finding was reasonable it will not be disturbed. There being no actual use of the land as a commercial gravel pit the "grandfather" principles cannot be applied to Pederson in this instance. San Diego County v. McClurken, 234 P.2d 972 (Cal. 1951).

Moreover, prior to December 1, 1961 the so-called gravel pit was upon the one acre parcel owned by Sanchez and not upon land owned by Pederson. Generally, zoning ordinances do not limit the right of a landowner to continue the use of the land in existence at the time of the adoption of the ordinance. State ex rel. Davie v. Coleman, 67 Nev. 636, 224 P.2d 309 (1958). This is the underlying premise of the "grandfather" principle. It is apparent that Pederson does not fall within that principle when he did not own the land from which the gravel was removed.

2. Another issue raised by the appellant was the exclusion by the trial judge of nearly all evidence that Pederson operated a gravel pit between 1962 and 1968. He apparently desired to use that fact to support his assertion that it was evidence of his intention in 1961, but it is not relevant to the question of an actual operation of a pit then. The admission of such facts would not change our conclusion.

Because we conclude the trial judge's finding that Pederson did not operate a commercial gravel pit before December 1, 1961 is supported by the evidence, we need not address other points raised by appellant.

Affirmed.

MOWBRAY and THOMPSON, JJ., and YOUNG, D. J., and COMPTON, D. J., concur.